```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
```

ROBERT SHAPIRO,

           Plaintiff,

  -against-

COMMUNITY FIRST SERVICES, INC. et al.,

           Defendants.

**NOT FOR PUBLICATION**

**MEMORANDUM & ORDER**

11-CV-4061 (KAM)(LB)

```
----------------------------------------X
```
**MATSUMOTO, United States District Judge:**

      On August 22, 2011, *pro se* plaintiff Robert Shapiro ("plaintiff") commenced this action against Jack Brown, Robyn Causey, Lewis Brooks, and Misti Moreno (collectively, the "individual defendants") and Community First Services, Inc. ("Community First") pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*"), alleging violations of his constitutional right to freely exercise his religion under the First Amendment of the United States Constitution. (ECF No. 1, Complaint dated 8/22/2011 ("Compl.").) By Memorandum and Order dated September 8, 2011, Judge Brian Cogan dismissed plaintiff's § 1983 claims against all of the defendants without leave to replead, dismissed plaintiff's *Bivens* claims against Community First without leave to replead, and granted plaintiff leave to replead

his *Bivens* claims against the individual defendants.[1] (*See* ECF No. 4, Judge Brian Cogan's Memorandum and Order dated 9/8/2011 ("9/8/11 Mem. & Order"), at 3-5.) On September 14, 2011, plaintiff filed an Amended Complaint, in which he improperly re-asserted claims against Community First identical to those in his original Complaint and included additional allegations in support of his § 1983 and *Bivens* claims against the individual defendants.[2] (ECF No. 5, Amended Complaint dated 9/13/2011 and filed 9/14/2011 ("Am. Compl.").)

Presently before the court is defendants' unopposed motion to dismiss plaintiff's remaining *Bivens* claims against the individual defendants for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) on the ground that no private right of action exists against individual employees of a private halfway house for alleged violations of First Amendment free exercise rights. (ECF No. 34, Defendants' Motion to Dismiss dated 3/2/2012 ("Defs.' Mot.").) In addition, defendants move to dismiss plaintiff's

---

[1] By Order dated January 23, 2012, Judge Cogan was recused from this case, and the Clerk of the Court reassigned this case to the undersigned. (Order of Recusal dated 1/23/2012.)

[2] In deciding the instant motion, the court need not consider plaintiff's renewed claims against Community First or his § 1983 claims against the individual defendants, as all of those claims were previously dismissed without leave to replead and, in any event, fail for the same reasons set forth in Judge Cogan's September 8, 2011 Memorandum and Order. (*See* 9/8/11 Mem. & Order at 3-5.) Accordingly, for purposes of defendants' motion, plaintiff's only remaining claims are his *Bivens* claims against the individual defendants.

*Bivens* claims pursuant to Rule 12(b)(1) or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56,[3] on the ground that even if the individual defendants are subject to a *Bivens* claim, plaintiff has failed to exhaust his administrative remedies. (*Id.*) For the reasons set forth below, the court denies defendants' Rule 12(b)(1) motion to dismiss and declines to exercise its discretion to convert defendants' motion to dismiss into a motion for summary judgment.

## **FACTUAL BACKGROUND**[4]

### **I. The Parties**

Community First is a privately-owned non-profit organization that contracts with local, state, and federal governments to develop and operate community reentry centers, homeless service centers, and affordable housing units. (*See* 9/8/11 Mem. & Order at 1.) Pursuant to a contract with the

---

[3] On March 2, 2012, defendants, through counsel, properly served plaintiff with the instant motion. (ECF No. 34, Exh. 4, Certificate of Service of Defs.' Mot. dated 6/1/2012.) Additionally, as required by Local Civil Rule 12.1, defendants served plaintiff with a "Notice Pursuant to E.D.N.Y. Local Civil Rule 12.1," informing plaintiff that the court may treat the instant motion to dismiss as a motion for summary judgment. (ECF No. 34, Exh. 3, Notice Pursuant to E.D.N.Y. Local Civil Rule 12.1 ("Rule 12.1 Notice").) By letter dated June 6, 2012, plaintiff informed the court that he mailed his opposition to defendants' motion on May 10, 2012 and requested additional time to refile his opposition. (ECF No. 36, Plaintiff's Letter dated 6/6/2012.) The court granted plaintiff's request for an extension of time to file his opposition until July 16, 2012. (Order dated 6/14/2012.) On July 25, 2012, defendants informed the court that plaintiff again failed to serve and file his opposition to defendants' motion. (ECF No. 40, Defendants' Letter dated 7/25/2012.) Accordingly, by Order dated July 26, 2012, the court deemed defendants' motion unopposed. (Order dated 7/26/2012.)

[4] The following facts, taken from the allegations in plaintiff's Amended Complaint and documents within the purview of judicial notice, are assumed to be true for the purpose of defendants' motion to dismiss.

3

Federal Bureau of Prisons ("BOP"), Community First operates Brooklyn House, a residential reentry center ("RRC" or "halfway house"),[5] which houses federal offenders and United States probation residents preparing for reentry into their respective communities. (*See* Am. Compl. at 1-2); http://www.cfsnyc.org/facilities/index.php (last visited 3/18/2013). The individual defendants are all non-government employees of Community First, most of whom work at Brooklyn House. (*See* Am. Compl. at 1-3.) Specifically, plaintiff alleges that, during his residence at Brooklyn House, defendant Jack Brown was the President and Chief Executive Officer of Community First. (Am. Compl. at 1); http://www.cfsnyc.org/about/jbrown.html (last visited 3/18/2013). Plaintiff further alleges that Robyn Causey was the Director of Brooklyn House, Lewis Brooks was a supervisor at Brooklyn House, and Misti Moreno was plaintiff's case manager at Brooklyn House. (*See* Am. Compl. at 1-3.)

Plaintiff became a resident of Brooklyn House pursuant to a criminal sentence imposed by United States District Judge Allyne Ross on March 31, 2011. *See* Sentencing Judgment for Violation of Supervised Release, *United States v. Shapiro*, No. 93-CR-1287 (E.D.N.Y. Mar. 31, 2011) ("[Defendant] shall serve twelve (12) months in a community confinement center.").

---

[5] "RRCs were previously referred to by the BOP as community corrections centers ('CCC') and are also commonly referred to as halfway houses." *Rosenthal v. Killian*, 667 F. Supp. 2d 364, 365 n.1 (S.D.N.Y. 2009).

Although plaintiff filed his original Complaint during his residence at Brooklyn House on August 22, 2011, (9/8/2011 Mem. & Order at 1), he filed his Amended Complaint on September 14, 2011, subsequent to his departure from Brooklyn House, (*see* ECF No. 3, Plaintiff's Letter dated 9/7/2011; Am. Compl.). Plaintiff is currently incarcerated at the George R. Vierno Center on Rikers Island. (ECF No. 11, Plaintiff's Notice of Change of Address dated 12/16/2011.)

## II. **Alleged Misconduct of the Individual Defendants**

Plaintiff alleges that during his three-week residence at Brooklyn House, the individual defendants violated his First Amendment free exercise rights by failing to give him enough time to attend his weekly Quaker services.[6] (Am. Compl. at 2.) Although plaintiff acknowledges that the individual defendants gave him three-hour passes to attend Quaker services on Sundays, he maintains that three hours was not enough time for him to

---

[6] Plaintiff further claims that, by denying him adequate time to attend weekly Quaker services, the individual defendants violated a court order issued by Judge Ross on July 21, 2011 in plaintiff's criminal proceeding. (Am. Compl. at 2.) Specifically, plaintiff maintains that Judge Ross ordered the government to permit him to attend Jewish services and Quaker services on a weekly basis. (*Id.*) Although Judge Ross held a status conference regarding plaintiff's violation of his supervised release conditions on July 21, 2011, the minute entry for that status conference does not appear to direct the government to permit plaintiff to attend weekly religious services. *See* Minute Entry for July 21, 2011 Status Conference, *United States v. Shapiro*, No. 93-CR-1287 (E.D.N.Y. July 21, 2011). Nor does the "order" referenced in plaintiff's Amended Complaint appear on the docket of his criminal case before Judge Ross. *See generally* Docket, *United States v. Shapiro*, No. 93-CR-1287 (E.D.N.Y.). Even assuming that Judge Ross ordered that plaintiff be permitted to attend Quaker services, plaintiff concedes that the individual defendants gave him three-hour passes to attend those services. (Am. Compl. at 2.)

5

travel to the Quaker meeting house in downtown Brooklyn, attend those religious services, and return to Brooklyn House. (*Id.*) Plaintiff further asserts that the three-hour limitation on weekly religious services applies only to residents who attend "local" religious services and contends that his Quaker services in downtown Brooklyn are not "local." (*Id.*)

Plaintiff also claims that the individual defendants "are lying about the 3 hour limitation 'rule.'" (*Id.*) In support of this claim, plaintiff alleges that he received a six-hour pass to attend Jewish services in downtown Brooklyn on August 20, 2011. (*Id.*) Plaintiff therefore asserts that the individual defendants are "engaging in taradiddles" by giving him only three hours to attend his weekly Quaker services. (*Id.*) In particular, plaintiff alleges that Ms. Moreno, his case manager, "was the first person to deny [him] religious services by not allowing [him] any travel time," and alleges that Ms. Causey, Mr. Brown, and Mr. Brooks subsequently "concurred with [Ms.] Moreno's decision and failed to overrule her decision to deny [p]laintiff the right to attend his religious services." (*Id.* at 2-3.) Finally, plaintiff maintains that he "pleaded with the defendants . . . to no avail." (*Id.* at 3.) To redress the alleged violations of his constitutional free exercise rights, plaintiff seeks nominal damages of $1 and punitive

damages of $10,000,000 from each of the individual defendants. (*Id.*)

## DISCUSSION

Defendants urge the court to dismiss plaintiff's *Bivens* claims on two independent jurisdictional grounds. First, defendants argue pursuant to Fed. R. Civ. P. 12(b)(1) that the court lacks subject matter jurisdiction over plaintiff's claims because a *Bivens* action is unavailable against employees of a privately operated RRC for alleged violations of the Free Exercise Clause of the First Amendment. (*See* ECF No. 34, Exh. 1, Defendants' Memorandum of Law in Support of Motion to Dismiss ("Defs.' Mem.") at 9-12.) Second, in their Rule 12(b)(1) motion to dismiss or, in the alternative, for summary judgment, defendants contend that dismissal is also warranted because plaintiff failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e. (*Id.* at 12-16.)

For the reasons set forth below, the court finds that defendants have erroneously invoked Rule 12(b)(1) in the instant motion because neither basis for dismissal offered by defendants is jurisdictional. As such, the court denies defendants' Rule 12(b)(1) motion to dismiss and, in an abundance of caution, declines to convert defendants' motion to dismiss into a motion for summary judgment.

7

## I. The Availability of a *Bivens* Remedy

Defendants first move to dismiss plaintiff's *Bivens* claims for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), arguing that plaintiff cannot maintain a *Bivens* action against employees of a privately operated halfway house for alleged violations of his free exercise rights under the First Amendment. (*Id.* at 9-12.) Defendants broadly assert that "where a plaintiff has attempted to assert a *Bivens* claim against an improper defendant, the plaintiff's action should be dismissed under Rule 12(b)(1)." (*Id.* at 9.) The court, however, finds that defendants have mistakenly invoked Rule 12(b)(1) in urging the court to reject the extension of an implied *Bivens* remedy against the individual defendants and therefore denies defendants' Rule 12(b)(1) motion. This result is warranted for two reasons.

First, courts declining to recognize an implied *Bivens* remedy against employees of privately operated correctional facilities have routinely dismissed such *Bivens* claims for failure to state a claim upon which relief can be granted, rather than for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *See, e.g.*, *Minneci v. Pollard*, 132 S. Ct. 617, 620 (2012); *Alba v. Montford*, 517 F.3d 1249, 1251, 1256 (11th Cir. 2008) (holding that plaintiff failed to state a claim upon which relief can be granted because *Bivens* remedy was

8

unavailable against private prison employees), *cert. denied*, 129 S. Ct. 632 (2008); *Holly v. Scott*, 434 F.3d 287, 291 (4th Cir. 2006) (affirming the district court's dismissal of plaintiff's *Bivens* claims against private prison employees under Rule 12(b)(6)), *cert. denied*, 126 S. Ct. 2333 (2006); *Brooks v. Sposato*, No. 11-CV-2598, 2012 WL 6756944, at *6 (E.D.N.Y. Nov. 26, 2012) ("[I]t appears that plaintiff's *Bivens* claims against the QPDF defendants would be subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim in light of *Minecci* [sic]."), *adopted by* 2013 WL 29964 (E.D.N.Y. Jan. 2, 2013); *cf. Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 65-66 (2001). For example, in *Minneci v. Pollard*, the Supreme Court recently rejected the extension of a *Bivens* remedy against employees of a privately operated federal prison for alleged violations of the plaintiff's constitutional rights under the Eighth Amendment. 132 S. Ct. at 620. Notably, the Supreme Court's review in *Minneci* arose from the district court's initial dismissal of the *pro se* plaintiff's *Bivens* claims "for failure to state a claim upon which relief can be granted." *Pollard v. Wackenhut Corr. Corp.*, No. 01-CV-6078, 2007 WL 1660688, at *1 (E.D. Cal. June 7, 2007), *aff'd on remand by* 688 F.3d 1053 (9th Cir. 2012). In *Minneci*, neither the district court nor the Supreme Court contemplated, much less held, that the unavailability of an Eighth Amendment *Bivens* claim against

employees of privately operated correctional facilities was jurisdictional in nature.

Relying heavily on the Supreme Court's reasoning in *Minneci*, defendants here seek dismissal of plaintiff's First Amendment *Bivens* claims on the grounds that such claims are unavailable as a matter of law against employees of a privately operated RRC. (Defs.' Mem. at 2, 10-11.) In doing so, defendants do not challenge the court's "statutory or constitutional power to adjudicate" plaintiff's *Bivens* claims, *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); rather, defendants' central contention is that plaintiff has failed to state a cognizable claim for relief because the *Bivens* remedy does not extend to employees of a privately operated halfway house for purported violations of the Free Exercise Clause. Consequently, defendants' challenge to the availability of a *Bivens* remedy in this case does not implicate the court's subject matter jurisdiction.[7] *Accord Peoples v. CCA Det. Ctrs.*,

---

[7] Moreover, the court briefly notes that plaintiff's claims appear to meet the basic requirements for federal question jurisdiction. Pursuant to 28 U.S.C. § 1331, the "district courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." It is well established that "'[f]ederal question jurisdiction may be properly invoked only if the plaintiff's complaint necessarily draws into question the interpretation or application of federal law.'" *Richardson v. N.Y.C. Transit*, No. 12-CV-5424, 2012 WL 5464176, at *1 (E.D.N.Y. Nov. 8, 2012) (quoting *New York v. White*, 528 F.2d 336, 338 (2d Cir. 1975)). Here, plaintiff's Amended Complaint alleges that the individual defendants violated his First Amendment right to freely exercise his Quaker religion. (Am. Compl. at 2.) In doing so, plaintiff's Amended Complaint necessarily draws into question the interpretation and application of federal constitutional law. *Richardson*, 2012 WL 5464176, at *1; *see also Davis v. Passman*, 442 U.S. 228,

422 F.3d 1090, 1096 (10th Cir. 2005) ("[The Supreme Court's] holding [in *Malesko*] that there is no private right of action for damages against private entities that engage in allegedly constitutional deprivations does not indicate that the federal courts lack jurisdiction to hear such a claim."), *aff'd in relevant part on reh'g*, 449 F.3d 1097 (2006) ("On this rehearing, we have determined unanimously that the district courts had subject matter jurisdiction over these claims.").

Second, the two cases cited by defendants are unavailing and fail to support the proposition that Rule 12(b)(1) is the proper vehicle to challenge the availability of a *Bivens* claim against the private individual defendants in this case. (*See* Defs.' Mem. at 9 (citing *Morrow v. C.O. Dupont*, No. 08-CV-3083, 2010 WL 1005856, at *4 (E.D.N.Y. Mar. 15, 2010); *Thomas v. Metro. Corr. Ctr.*, No. 09-CV-1769, 2010 WL 2507041, at *5 (S.D.N.Y. June 21, 2010)).) The district courts in both *Morrow* and *Thomas* dismissed the plaintiff's *Bivens* claims against federal defendants sued in their official capacities for lack of subject matter jurisdiction. *See Morrow*, 2010 WL 1005856, at *4 (dismissing *Bivens* claims against former assistant director of the United States Marshals Service sued in his official capacity for lack of subject matter jurisdiction);

---

236 (1979) ("It is clear that the District Court had jurisdiction under 28 U.S.C. § 1331(a) to consider petitioner's [*Bivens*] claim [that respondents violated her Fifth Amendment rights].").

*Thomas*, 2010 WL 2507041, at *4-5 (dismissing *Bivens* claims against federal prison and prison employees sued in their official capacities for lack of subject matter jurisdiction). In each of these cases, the district court dismissed the plaintiff's *Bivens* claims against federal government defendants sued in their official capacities based on the doctrine of sovereign immunity, which implicates the subject matter jurisdiction of the federal courts. *F.D.I.C. v. Meyer*, 510 U.S. 471, 474 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit. Sovereign immunity is jurisdictional in nature." (citations omitted)).

      By contrast, plaintiff here asserts his *Bivens* claims against individual employees of a privately-operated RRC, rather than officials or entities entitled to sovereign immunity. Thus, the sovereign immunity doctrine does not present a jurisdictional bar to plaintiff's suit in this case, and the cases to which defendants cite are wholly inapposite.

      Accordingly, the court denies defendants' Rule 12(b)(1) motion to dismiss and grants defendants leave to renew their challenge to the availability of a *Bivens* remedy in a Rule

12(b)(6) motion to dismiss or a Rule 56 motion for summary judgment.[8]

## II. **Administrative Exhaustion under the PLRA**

As an additional basis for dismissal, defendants maintain that plaintiff's *Bivens* claims must be dismissed because he failed to exhaust his available administrative remedies as required under the PLRA. (Defs.' Mem. at 12-16.) Again invoking Rule 12(b)(1), defendants characterize plaintiff's failure to exhaust his administrative remedies as a jurisdictional defect and maintain that district courts in the Second Circuit "have not uniformly held whether an inmate's failure to exhaust administrative remedies is a jurisdictional bar to the inmate's claim, or whether non-exhaustion is an affirmative defense to be raised in a 12(b)(6) motion to dismiss or a motion for summary judgment." (*Id.* at 12 n.9.)

Irrespective of the purported confusion among district courts in this Circuit, the Second Circuit has held in no uncertain terms for nearly a decade that "[i]t is now *well-*

---

[8] Defendants have not requested the court to construe their Rule 12(b)(1) motion as a Rule 12(b)(6) motion or a motion for summary judgment, and the court need not do so at this time. Having reserved their right to move for dismissal on various other grounds not presently before the court, (Defs.' Mem. at 12 n.8), defendants are free to again pursue dismissal of plaintiff's Amended Complaint pursuant to Rule 12(b)(6) or Rule 56 on the ground that a *Bivens* remedy is unavailable against employees of a privately operated halfway house, or on any other ground. For example, if they deem it appropriate to do so, defendants may move for summary judgment on the merits of plaintiff's First Amendment claim, with supporting affidavits, on proper notice to plaintiff pursuant to the Federal Rules of Civil Procedure and Local Civil Rules 56.1 and 56.2.

13

*settled in this circuit* that exhaustion under the PLRA is not jurisdictional." *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004) (emphasis added) (citing *Richardson v. Goord*, 347 F.3d 431, 434 (2d Cir. 2003)). In light of this controlling Second Circuit precedent, which defendants acknowledge in their own submissions, (Defs.' Mem. at 12 n.9 (citing *Ziemba*, 366 F.3d at 163)), the court finds that defendants improperly raised the affirmative defense of PLRA exhaustion on a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.

Perhaps acknowledging the flaw of their position regarding the jurisdictional nature of the PLRA exhaustion requirement, defendants alternatively request that the court convert their Rule 12(b)(1) motion to dismiss into a Rule 56 motion for summary judgment on the limited issue of whether plaintiff exhausted his administrative remedies. (*Id.* at 12-13 n.9.) Despite this invitation, the court declines to convert defendants' motion to dismiss into a summary judgment motion on the exhaustion issue for the reasons explained below.

First, as a threshold matter, the Federal Rules of Civil Procedure do not explicitly authorize the conversion of a Rule 12(b)(1) motion into a motion for summary judgment. Pursuant to Rule 12(d), "[i]f on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for

14

summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Notably absent from Rule 12(d) is any mention of, much less authorization for, converting a Rule 12(b)(1) motion into a motion for summary judgment. Moreover, in the Second Circuit, a Rule 12(b)(1) motion generally "cannot be converted into a Rule 56 motion."[9] *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986); *see also Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004) ("[A] motion to dismiss for lack of jurisdiction cannot be converted in a Rule 56 motion . . . ."); *Ireland v. Suffolk Cnty. of New York*, 242 F. Supp. 2d 178, 185 (E.D.N.Y. 2003) ("[A Rule 12(b)(1)] motion *cannot* be converted into a Rule 56 motion for summary judgment." (emphasis in original)). Thus, as a formal matter, defendants' request to convert their Rule 12(b)(1) motion into a summary judgment motion is foreclosed by the Federal Rules of Civil Procedure and Second Circuit precedent.[10]

---

[9] According to one district court in this Circuit, "there is . . . a widely recognized exception to [the general rule that a Rule 12(b)(1) motion cannot be converted into a summary judgment motion.]" *Avedis v. Herman*, 25 F. Supp. 2d 256, 262 (S.D.N.Y. 1998). Under this exception, "[i]f the jurisdictional question is intertwined with the merits of the case, the issue should be resolved under 12(b)(6) or Rule 56." *Id.* "Where . . . subject matter jurisdiction is dependent upon the same statute which provides the substantive claim in the case, the jurisdictional claim and the merits are considered to be intertwined." *Id.* Even assuming that such an exception is recognized in this Circuit, the exception is inapplicable here. The proffered jurisdictional question in this case – whether plaintiff exhausted his available administrative remedies under the PLRA – is not intertwined with the merits of plaintiff's First Amendment *Bivens* claim.

[10] Defendants' reliance on *McCoy v. Goord*, 255 F. Supp. 2d 233, 249-51 (S.D.N.Y. 2003) to support their request for conversion is misplaced. In *McCoy*, the district court explained that "Rules 12(b) and 56(c) require

15

Second, even if the court were authorized to convert defendants' improper Rule 12(b)(1) motion into one for summary judgment as requested, the court, in its discretion, would decline to do so in this case. It is well established that "[f]ederal courts have . . . complete discretion in determining whether to convert [a] motion to one for summary judgment." *Stephens v. Bayview Nursing & Rehab. Ctr.*, No. 07-CV-596, 2008 WL 728896, at *2 (E.D.N.Y. Mar. 17, 2008) (internal quotation marks omitted); *Liberty Mut. Ins. Co. v. N. Picco & Sons Contracting Co., Inc.,* No. 05-CV-217, 2008 WL 190310, at *3 (S.D.N.Y. Jan. 18, 2008) ("It is within the discretion of [the district court] to convert a motion filed under Rule 12(b)(6) into a motion seeking summary judgment . . . ."). In exercising this discretion, the court must be mindful that "'[t]here would be little point in considering a summary judgment motion when significant relevant facts may yet be discovered.'" *Stephens*, 2008 WL 728896 at *3 (alteration in original) (quoting *Wajilam Exps. (Singapore) Pte. Ltd. v. ATL Shipping Ltd.*, 475 F. Supp. 2d 275, 278 (S.D.N.Y. 2006)).

---

that if a district court considers matters outside of the pleadings, it must then convert a motion *under Rule 12(b)(6)* to one for summary judgment." 255 F. Supp. 2d at 251 (emphasis added). Indeed, in *McCoy*, the district court explicitly noted that raising the affirmative defense of PLRA exhaustion in a Rule 12(b)(1) motion "is not appropriate because exhaustion is not jurisdictional." *Id.* at 249. Thus, *McCoy* does not stand for the proposition that the court may convert a Rule 12(b)(1) motion into a motion for summary judgment on the issue of exhaustion.

16

Although provided with a Rule 12.1 Notice informing him that the court may convert defendants' motion to dismiss into a summary judgment motion, *pro se* plaintiff had no opportunity to conduct discovery on any issues relevant to defendants' PLRA exhaustion defense. Indeed, after discovery, plaintiff may well be able to provide evidence that no administrative remedies were in fact available to him given his brief three-week stay at Brooklyn House or, alternatively, that "special circumstances" excuse his failure to exhaust those available remedies. Particularly in light of plaintiff's *pro se* status and the lack of authority to convert defendants' Rule 12(b)(1) motion in the present circumstances, the court finds that conversion of defendants' Rule 12(b)(1) motion to a motion for summary judgment is not warranted at this time.

## CONCLUSION

For the foregoing reasons, defendants' Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is denied, and the court in its discretion declines to convert defendants' motion to dismiss into a motion for summary judgment under Rule 56.[11]

---

[11] Should defendants file a motion under either Rule 12 or Rule 56 advancing the same arguments raised in the instant motion, defendants are encouraged, in the interest of judicial economy, to assert all bases for dismissal of plaintiff's Amended Complaint, including those grounds not briefed in the instant motion but referenced in defendants' submissions. (*See* Defs.' Mem. at 12 n.8.)

Counsel for defendants is respectfully directed to serve a copy of this Memorandum and Order on plaintiff and note service on the docket immediately.

**SO ORDERED.**

Dated:   March 18, 2013
         Brooklyn, New York

_____/s/_____
Kiyo A. Matsumoto
United States District Judge