UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
ROBERT L. SHAPIRO

                       Plaintiff,

    -against-

COMMUNITY FIRST SERVICES, INC.,
JACK BROWN, ROBYN CAUSEY,
LEWIS BROOKS, and MISTI MORENO,

                       Defendants.

--------------------------------------X

**MEMORANDUM AND ORDER**

11-CV-4061 (KAM)(LB)

**KIYO A. MATSUMOTO**, United States District Judge:

      On August 22, 2011, Robert Shapiro ("plaintiff")
commenced this action *pro se* against Jack Brown, Robyn Causey,
Lewis Brooks, and Misti Moreno (collectively, "individual
defendants") and Community First Services, Inc. ("Community
First") pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown
Names Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)
("*Bivens*"), alleging violations of his constitutional right to
freely exercise his religion under the First Amendment of the
United States Constitution. (ECF No. 1, Complaint dated
8/22/2011 ("Compl.").)  By Memorandum and Order dated September
8, 2011, Judge Brian Cogan dismissed plaintiff's § 1983 claims
against all of the defendants without leave to replead,
dismissed plaintiff's *Bivens* claims against Community First
without leave to replead, and granted plaintiff leave to replead

1

his *Bivens* claims against the individual defendants. (ECF No. 4, Judge Cogan's Memorandum and Order dated 9/8/2011 ("9/8/11 Mem. & Order") at 3–5.) On September 14, 2011, plaintiff filed an amended complaint, in which he seemingly ignored Judge Cogan's Memorandum and Order, and reasserted claims against Community First identical to those in his original complaint and included additional allegations in support of his § 1983 and *Bivens* claims against the defendants. (ECF No. 5, Amended Complaint dated 9/13/2011 and filed 9/14/2011 ("Am. Compl.").)[1] On January 23, 2012, this case was reassigned to the undersigned.

On March 2, 2012, individual defendants filed a motion to dismiss the remaining *Bivens* claims in plaintiff's amended complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 34, Defendants' Motion to Dismiss dated 3/2/2012 ("Defs.' Mot.").) Defendants asserted that this court lacked subject matter jurisdiction given that no private

---

[1] The court need not consider plaintiff's reasserted claims against Community First or his § 1983 claims against the individual defendants. These claims were previously dismissed without leave to replead by Judge Cogan and, in any event, fail for the same reasons addressed in Judge Cogan's September 8, 2011 Memorandum and Order pursuant to 28 U.S.C. 1915(e)(2)(B). (9/8/11 Mem. & Order at 3–5.) Accordingly, those claims were and are again dismissed. Consequently, plaintiff's only remaining claims are his *Bivens* claims against the individual defendants.

right of action existed against individual employees of a private halfway house for alleged violations of the First Amendment. (*Id.*) In the alternative, defendants moved for summary judgment claiming that even if plaintiff had an actionable *Bivens* claim, he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. (*Id.*) Both motions were unopposed, despite what appears to be proper service. Nonetheless, this court denied defendants' Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction and declined to convert it into a motion for summary judgment under Rule 56. (ECF No. 43, Memorandum and Order dated 3/18/13 ("3/18/13 Mem. & Order") at 7.) This court granted defendants leave to file a renewed motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (3/18/13 Mem. & Order at 13 n.4.)

Defendants now renew their motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (ECF No. 45, Defendants' Motion to Dismiss for Failure to State a Claim dated 4/3/2013 ("Defs.' Renewed Mot.").) This motion is also unopposed, despite apparently proper service on plaintiff. (*See* ECF No. 45, Ex. 2, Cert. of Service.) Defendants move to dismiss on grounds that individual defendants are not subject to a *Bivens* cause of action as employees of private non-profit entity and that plaintiff had

adequate alternative remedies.  (ECF No. 45, Ex. 1, Defendants'
Memorandum in Support of Motion to Dismiss dated 4/3/2013
("Defs.' Mem.") at 1.)  For the reasons set forth below, the
court grants defendants' Rule 12(b)(6) motion to dismiss
plaintiff's amended complaint.

**BACKGROUND**

## I. The Parties

Community First is a privately-owned non-profit
organization that contracts with local, state, and federal
governments to develop and operate community reentry centers,
homeless service centers, and affordable housing units.  (*See*
9/8/11 Mem. & Order at 1.)  Under contract with the Federal
Bureau of Prisons ("BOP"), Community First operates Brooklyn
House, a residential reentry center ("RRC" or "halfway house"),
which houses federal offenders and United States probation
residents preparing for reentry into their respective
communities.  (*See* Am. Compl. at 1–2).  The individual
defendants are all non-government employees of Community First,
and three of the individual defendants work at Brooklyn House.
(*Id*. at 1–3.)  Specifically, plaintiff alleges that, during his
residence at Brooklyn House, defendant Jack Brown was the
President and Chief Executive Officer of Community First.  (*Id*.
at 1.)  Plaintiff further alleges that Robyn Causey was the
Director of Brooklyn House, Lewis Brooks was a supervisor at

Brooklyn House, and Misti Moreno was plaintiff's case manager at Brooklyn House. (*Id.* at 1-3.)

Plaintiff became a resident of Brooklyn House pursuant to a criminal sentence imposed by United States District Judge Allyne Ross on March 31, 2011. (*See United States v. Shapiro*, Docket No. 93-CR-1287, ECF No. 202, Sentencing Judgment for Violation of Supervised Release dated 3/31/11 ("[Defendant] shall serve twelve (12) months in a community confinement center.").) Although plaintiff filed his original complaint while residing at Brooklyn House on August 22, 2011 (*see* 9/8/2011 Mem. & Order at 1), he filed his amended complaint on September 14, 2011, subsequent to his departure from Brooklyn House (*see* ECF No. 3, Plaintiff's Change of Address dated 9/7/2011; Am. Compl.). Plaintiff is currently incarcerated at the George R. Vierno Center on Rikers Island. (ECF No. 11, Plaintiff's Notice of Change of Address dated 12/16/2011; ECF No. 36, Plaintiff's Letter dated 6/6/2012.)

## II.  Alleged Misconduct of the Individual Defendants

During his three-week residence at Brooklyn House, plaintiff claims the individual defendants violated his First Amendment right to freely exercise his religion by failing to allow him sufficient time to attend weekly Quaker services. (Am. Compl. at 2.)  While plaintiff acknowledges defendants allowed

him a time period of three hours to attend services on Sundays, he maintains that this was not enough time to travel to the Quaker meeting house in downtown Brooklyn, attend the religious services, and return to Brooklyn House. (*Id.*) Plaintiff also asserts that the three-hour limitation on weekly religious services applies only to residents attending "local" religious services. (*Id.*) Thus, he contends he should not have been subject to the limitation as the Quaker services in downtown Brooklyn were not "local." (*Id.*)

Plaintiff further alleges that individual defendants "are lying about the 3 hour limitation 'rule.'" (*Id.*) In support of this claim, plaintiff claims he once received a six-hour pass to attend Jewish services in downtown Brooklyn on August 20, 2011. (*Id.*) Plaintiff asserts that defendants are "engaging in taradiddles" by allowing him only three hours to attend weekly Quaker services. (Am. Compl. at 2.) In particular, plaintiff alleges that defendant Moreno, his case manager, "was the first person to deny [him] religious services by not allowing [him] any travel time." (*Id.*) He claims that defendants Causey, Brown, and Brooks subsequently "concurred with Moreno's decision and failed to overrule her decision to deny [p]laintiff the right to attend his religious services." (*Id.* at 3.) Plaintiff further maintains that he "pleaded with the defendants . . . to no avail." (*Id.*) To redress the alleged violations of his free

exercise rights, plaintiff seeks nominal damages of $1 and punitive damages of $10,000,000 from each of the individual defendants. (*Id.*)

## DISCUSSION

Individual defendants move the court to dismiss plaintiff's *Bivens* claims pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Individual defendants argue that plaintiff cannot bring a *Bivens* action against employees of a privately operated RRC for alleged violations of the Free Exercise Clause of the First Amendment. (Defs.' Mem. at 6-8.) Further, defendants contend dismissal is warranted because plaintiff has adequate alternative remedies for alleged constitutional violations through the Bureau of Prison's Administrative Remedy Program. (*Id.* at 8-10.)

For the reasons discussed below, the court finds grounds for dismissal pursuant to Rule 12(b)(6). As such, the court grants defendants' motion to dismiss plaintiff's amended complaint in its entirety, with prejudice.

## I. APPLICABLE STANDARD

Pursuant to Rule 12(b)(6), a plaintiff's complaint must be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the court must "accept as true all

allegations in the complaint and draw all reasonable inferences
in favor of the non-moving party." *Gorman v. Consol. Edison
Corp.*, 488 F.3d 586, 591-92 (2d Cir. 2007); *see also
Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002);
*Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 320 (2d Cir.
2009); *Matson v. Bd. of Educ. of City Sch. Dist. of NY*, 631 F.3d
57, 63 (2d Cir. 2011).  Nonetheless, a complaint must "contain
sufficient factual matter, accepted as true, to 'state a claim
to relief that is *plausible* on its face.'" *Ashcroft v.
Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v.
Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added).  To be
plausible, the alleged factual content must "allow[] the court
to draw the reasonable inference that the defendant is liable
for the misconduct alleged." *Matson*, 631 F.3d at 63
(quoting *Ashcroft v. Iqbal*, 556 U.S. at 678).  While "detailed
factual allegations" are unnecessary and unexpected, the court
must be able to "infer more than the mere possibility of
misconduct."  *Iqbal*, 556 U.S. at 678-679.  If the complaint
permits no such inference, "it has not 'show[n]'—'that the
pleader is entitled to relief.'"  *Id.* (quoting Fed. R. Civ. P.
8(a)(2)).

     Because plaintiff is proceeding *pro se*, his pleadings
"must be read liberally and should be construed to raise the
strongest arguments that they suggest."  *Graham v. Henderson*, 89

F.3d 75, 79 (2d Cir. 1996) (citing *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (internal quotation marks omitted). Despite the court's liberal interpretation of *pro se* complaints, however, a *pro se* litigant must still comply with the relevant rules of procedural and substantive law. *Doe v. Torres*, No. 05 Civ. 3388, 2006 WL 290480, at *3(S.D.N.Y. Feb. 8, 2006) (citing *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). Additionally, plaintiff is proceeding *in forma pauperis*, and pursuant to the *in forma pauperis* statute, the court must dismiss the action if it determines that it is "(i) frivolous or malicious, (ii) fails to state a claim upon which relief may be granted, or (iii) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

## II. ANALYSIS

### A. The Availability of a *Bivens* Remedy

In deciding whether plaintiff has stated a cause of action under *Bivens* against private employees of a federally contracted correctional facility, the court must first determine whether a *Bivens* remedy is available in such circumstances. In *Bivens*, the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001); *Iqbal*, 556 U.S. at 675 (same); *Tavarez v. Reno*, 54 F.3d 109, 110 (2d

Cir. 1995) (explaining that the two elements of a *Bivens* claim
are that (1) "a defendant acted under color of federal law" to
(2) "deprive plaintiff of a constitutional right."). The
Supreme Court held that a victim of a Fourth Amendment violation
by federal officials has a federal claim for monetary relief
against those officials. *See Bivens*, 403 U.S. 388 (1971).
While it is well established that "*Bivens* is not confined to
Fourth Amendment claims," *Wilkie v. Robbins*, 551 U.S. 537, 574
(2007), the Supreme Court has restricted the remedy to certain,
limited contexts. *See, e.g.*, *Davis v. Passman*, 442 U.S. 228,
248-249 (1979) (allowing *Bivens* claim seeking money damages for
violation of the Due Process Clause of the Fifth Amendment);
*Carlson v. Green*, 446 U.S. 14, 19-20 (1980) (applying *Bivens* for
violations of the Eighth Amendment based on inadequate medical
care).

Thus, although the Supreme Court has extended *Bivens*
to Fourth, Fifth, and Eighth Amendment violations in certain
contexts, it has declined repeatedly to imply damages remedies
for other constitutional violations. The Supreme Court has
explained that "[b]ecause implied causes of action are
disfavored, the Court has been reluctant to extend *Bivens*
liability to any new context or new category of defendants."
*Iqbal*, 556 U.S. at 675; *see also Minneci v. Pollard*, 132 S. Ct.
617, 622 (2012) ("Since *Carlson*, the Court has had to decide in

several different instances whether to imply a *Bivens* action.
And in each instance it has decided against the existence of
such an action."). Various circuit courts, including the Second
Circuit, are similarly reluctant to extend *Bivens* to new
constitutional contexts. *See, e.g.*, *Dotson v. Griesa*, 398 F.3d
156, 166 (2d Cir. 2005) ("Because a *Bivens* action is a
judicially created remedy . . . courts proceed cautiously in
extending such implied relief[.]"); *Arar v. Ashcroft*, 585 F.3d
559, 571 (2d Cir. 2009) ("[T]he *Bivens* remedy is an
extraordinary thing that should rarely if ever be applied in
'new contexts.'"); *Holly v. Scott*, 434 F.3d 287, 289 (4th Cir.
2006) ("A *Bivens* cause of action is implied without any express
congressional authority whatsoever. This is hardly the
preferred course.").

   Although the Supreme Court has not recognized a *Bivens*
remedy in any new context since *Carlson*, it has provided some
guidance regarding how to decide whether to imply a *Bivens*
remedy.

> [T]he decision to recognize a *Bivens* remedy may
> require two steps. [1] In the first place, there
> is the question whether any alternative, existing
> process for protecting the interest amounts to a
> convincing reason . . . to refrain from providing
> a new and freestanding remedy in damages. . . .
> [2] But even in the absence of an alternative, a
> *Bivens* remedy is a subject of judgment: the
> federal courts must make the kind of remedial
> determination that is appropriate for a common-
> law tribunal, paying particular heed, however, to

any special factors counselling hesitation before
authorizing a new kind of federal litigation.

*Wilkie*, 551 U.S. at 550 (citing *Bush v. Lucas*, 462 U.S. 367, 378

(1983)) (internal quotation marks omitted).

   **1.   First Amendment Claims under *Bivens***

       Here, defendants first argue that plaintiff's *Bivens*

claim alleging violations of the free exercise clause should be

dismissed because a *Bivens* remedy is not available for First

Amendment violations.  (Defs.' Mem. at 7.)  As discussed *supra*,

the Supreme Court has explicitly recognized *Bivens* actions only

in the context of Fourth, Fifth, and Eighth Amendment

violations, and has repeatedly declined to imply a *Bivens* action

for First Amendment violations.  *See, e.g.*, *Bush v. Lucas*, 462

U.S. 367 (1983) (declining to extend *Bivens* to First Amendment

defamation claims against federal employer); *Iqbal*, 556 U.S. at

675 ("[W]e have not found an implied damages remedy under the

Free Exercise Clause.  Indeed, we have declined to extend *Bivens*

to a claim sounding in the First Amendment."); *Reichle v.*

*Howards*, 132 S. Ct. 2088, 2093 n.4 (2012) ("We have never held

that *Bivens* extends to First Amendment claims.").

       Lower courts are in disagreement as to whether a

*Bivens* remedy is available in the First Amendment context.  Some

courts have refused to imply a *Bivens* remedy for First Amendment

claims by following the two-step analysis set forth in *Wilkie*.

*E.g.*, *Garcia-Cabrera v. Cohen*, 81 F. Supp. 2d 1272, 1288 (M.D. Ala. 2000), *aff'd* 237 F.3d 636 (11th Cir. 2000) (holding *Bivens* remedy for alleged First Amendment violation precluded by comprehensiveness of Civil Service Reform Act); *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 n.6 (8th Cir. 2008) ("We have never found a *Bivens* action to extend to a Free Exercise claim, and it is doubtful we would do so."); *Payne v. Meeks*, 200 F. Supp. 2d 200, 206 (E.D.N.Y. 2002) (holding that federal employee lacking any statutory remedy was nevertheless precluded from bringing *Bivens* action for First Amendment claim). *But cf. Bistrian v. Levi*, 696 F.3d 352, 376 n.9 (3rd Cir. 2012) ("[O]ur Court, however, relying on *Bivens,* has held that 'a federal cause of action for damages may be implied directly from the [F]irst [A]mendment.'"); *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 14 F.3d 457, 464 (9th Cir. 1994) (finding actionable *Bivens* claim where complaint contained specific factual allegations that showed FBI agents interfered with plaintiffs' First Amendment rights to demonstrate); *Espinoza v. Zenk*, No. 10-CV-427, 2013 WL 1232208, at *9-10 (E.D.N.Y. Mar. 27, 2013) (recognizing a *Bivens* remedy for alleged First and Fifth Amendment violations); *Hartley v. Wilfert*, 918 F. Supp. 2d 45, 51 (D.D.C. Jan. 24, 2013) (holding that plaintiff stated a Bivens claim for violation of her First Amendment right to free speech); *Turkmen v. Ashcroft*, 915 F. Supp. 2d 314, 353 (E.D.N.Y.

Jan. 15, 2013) (holding that *Bivens* should be extended to a free exercise claim where plaintiffs had no other available remedies and there were no special factors counseling hesitation in implying *Bivens* remedy).  Notably, the Second Circuit has not yet decided whether a *Bivens* remedy is available for a Free Exercise claim.

Nevertheless, this argument was not raised by defendants, and so the court will proceed under the assumption, without deciding, that plaintiff's Free Exercise claim is actionable under *Bivens*.  *See Iqbal*, 556 U.S. at 675 ("Petitioners do not press this argument, however, so we assume, without deciding, that respondent's First Amendment claim is actionable under *Bivens*.").

### 2. Individual Employees of Private Contractor

Even assuming First Amendment claims are actionable under *Bivens*, however, the fact that plaintiff alleges constitutional violations against defendants who are not "federal officers" raises concerns.  Given that all claims against Community First were dismissed, plaintiff's only remaining claims are against the private employees of the privately operated halfway house.  *Bivens* has never been extended under controlling precedent to actions for damages against individual employees of a private contractor.

In *Correctional Services Corp. v. Malesko*, 534 U.S.

61, 65-66 (2001) the Supreme Court held that a *Bivens* action was
not permitted against a private entity operating under contract
with the Bureau of Prisons. *Malesko*, 534 U.S. at 74 (declining
to extend *Bivens* to "contexts that would not advance *Bivens'*
core purpose of deterring individual [federal] officers from
engaging in unconstitutional wrongdoing."). The Supreme Court's
ruling was based on the following determinations: (1) *Bivens*
only serves as a remedy for claims against individual federal
officials, and (2) there exist other adequate administrative
remedies for a plaintiff to pursue against the correctional
facilities. *Id.* The Supreme Court in *Malesko* expressly noted
that the Court was not confronted with the question of whether
*Bivens* actions applied to *employees* of private prisons. *See id.*
at 65, 78-79.

In *Minneci v. Pollard*, 132 S. Ct. 617, 620 (2012), the
Supreme Court declined to recognize an Eighth Amendment *Bivens*
claim against individual employees of privately operated
correctional facilities. Indeed, prior to *Minneci*, courts had
routinely dismissed such claims under Rule 12(b)(6). *See, e.g.*,
*Alba v. Montford*, 517 F.3d 1249, 1251, 1256 (11th Cir. 2008)
(finding no *Bivens* remedy for claims against private prison
employees and holding plaintiff failed to state a claim); *Holly*
*v. Scott*, 434 F.3d 287, 291 (4th Cir. 2006) (affirming dismissal
of plaintiff's *Bivens* claims against private prison employees

under Rule 12(b)(6)) [hereinafter "*Holly I*"]; *Holly v. Christensen*, No. 07-CT-3134, 2008 WL 956722, at *4 (E.D.N.C. Apr. 8, 2008) (collecting cases holding that private individuals who work as employees for private entities are not subject to *Bivens* liability).

Since *Malesko* and *Minneci*, however, federal courts are in disagreement over the extent to which *Bivens* suits are allowed against private individuals. *Compare Vega v. United States*, No. C11-632-RSM, 2012 WL 5384735, at *2 (W.D. Wash. Nov. 1, 2012), *vacated in part on other grounds*, 2013 WL 1333978 ("Because *Minneci* clarified that private employees acting under color of federal law cannot be liable under *Bivens*, Plaintiff's *Bivens* claims against the [employees of a private re-entry house] are no longer colorable."), *and Brooks v. Sposato*, No. 11-CV-2598, 2012 WL 6756944, at *6 (E.D.N.Y. Nov. 26, 2012), *adopted by* 2013 WL 29964 (E.D.N.Y. Jan. 2, 2013) (dismissing plaintiff's claims against employees of private correctional facility under 12(b)(6), "in light of *Minneci*"), *and Feldman v. Lyons*, 852 F. Supp. 2d 274, 279 (N.D.N.Y. 2012) (*Bivens* claim precluded by *Malesko* and *Minneci* even if non-federal individual acted in concert with FBI agents to violate plaintiff's constitutional rights), *with Espinoza*, 2013 WL 1232208, at *8 n.12 (noting that while some courts "have read *Minneci* expansively and found that it bars all claims against employees

of private       prisons . . . if the Supreme Court intended to bar *all Bivens* claims against employees of private prisons, the Court would have stated so clearly."). It thus remains an open question whether a court may imply a *Bivens* claim against employees of privately-operated facilities, such as halfway houses, to redress constitutional violations.

**A.    Under Color of Federal Law**

A *Bivens* claim may only be brought against federal officials or individuals who have acted under color of federal law. *See* Bivens, 403 U.S. at 397; *Tavarez*, 54 F.3d at 110. Accordingly, those courts that have permitted *Bivens* actions against employees of private entities have first necessarily concluded that the employees acted "under color of federal law" in committing constitutional violations. *E.g.*, *Sarro*, *v. Cornell Corr., Inc.*, 248 F. Supp. 2d 52, 59-60 (D.R.I. 2003) (concluding that private prison guards employed by private detention facility were federal actors under "public function test" borrowed from § 1983 analysis); *Bender v. Gen. Servs. Admin.*, 539 F. Supp. 2d 702, 707-08 (S.D.N.Y. 2008) (holding that privately contracted security guard acted under color of federal law where guard cooperated and worked in tandem with federal police officers to arrest plaintiff); *Doe v. Torres*, No. 05-CV-3388, 2006 WL 290480, at *9 (S.D.N.Y. Feb. 8, 2006) (following Supreme Court precedent on narrow issue of whether

doctors who treat prison inmates are government actors to
conclude that doctor contracted by BOP had acted under color of
federal law).

    To determine whether a private individual acts under
color of federal law, courts have borrowed principles from §
1983 analysis and its analogous state action standards. *See*
*Chin v. Bowen*, 833 F.2d 21, 24 (2d. Cir. 1987) ("Courts of
Appeals have held that section 1983 concepts of state action
apply in determining whether action was taken 'under color of
federal law' for *Bivens* purposes"); *Island Online, Inc. v.*
*Network Solutions, Inc.*, 119 F. Supp. 2d 289, 304 (E.D.N.Y.
2000). Notably, however, even for purposes of claims brought
pursuant to § 1983, "[f]ederal courts are split on the question
whether organizations that operate halfway houses, and their
employees, are state actors." *Kelly v. N.J. Dep't of Corr.*, No.
11-7256, 2012 WL 6203691, at *6 (D.N.J. Dec. 11, 2012)
(collecting cases and concluding that plaintiff failed to allege
facts to suggest that private halfway house functioned as state
actor); *e.g.*, *Phillips v. Goord*, No. 08-CV-0957A, 2009 WL
909593, at *3 (W.D.N.Y. Apr. 1, 2009) (holding that halfway
house's status as a not-for-profit agency "alone would lead one
to conclude that the Buffalo Halfway House is a private
organization, that is not subject to liability under § 1983").

The most relevant test from § 1983 state action analysis to the circumstances here is the public function test, under which a private actor who exercises "powers traditionally exclusively reserved to the State" is deemed to have acted under color of law.[2] *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974); *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 492 (2d Cir. 2009). The public function test, however, "has been 'limited strictly, and covers only private actors performing functions traditionally the *exclusive* prerogative of the State.'" *Island Online*, 119 F. Supp. 2d at 305 (quoting *Nat'l Broad. Co., Inc. v. Commc'ns Workers of Am., AFL-CIO*, 860 F.2d 1022, 1026 (11th Cir. 1988)) (emphasis added).

Plaintiff does not assert that individual defendants are federal actors,[3] but the court nevertheless finds that the individual defendants here, private employees of a private, non-profit organization, have not acted under color of federal law

_____

[2] Other tests include: (1) the "symbiotic relationship" test, limited to situations involving leases of public property, *see Island Online*, 119 F. Supp. 2d at 306-07; (2) the "close nexus" test, *e.g.*, *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (holding that the state can be held responsible for a private actor's decision "only when it has exercised such coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State"); and (3) when a private actor's challenged action is "undertaken at the behest of, under the influence of or for the financial benefit of the State," such as "when a state regulation compels or influences the private actor's alleged Constitutional violation," *Island Online*, 119 F. Supp. 2d at 307 (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982)).
[3] The Amended Complaint merely alleges that Community First is a "federal half-way house maintained by the defendants who are contractors" to the federal government. (Am. Compl. at 1.)

in the circumstances presented. First, under the public
function test, a private entity and its employees may only be
deemed to have acted under color of law if they perform
functions traditionally held *exclusively* in the province of the
government. *Island Online*, 119 F. Supp. 2d at 305. The public
function test has tended to result in differing outcomes
depending on whether the private entity is a prison operator —
in which case, courts generally find state action, as in *Sarro*,[4]
— or a residential treatment center housing parolees — in which
case, several courts have concluded that housing parolees in
transitional housing is not an exclusively governmental
function. *See Moore v. Broady*, No. 10-CV-3250, 2010 WL 3125008,
at *5 (E.D.N.Y. Aug. 6, 2010); *Byng v. Delta Recovery Serv.*, No.
13-cv-733, 2013 WL 3897485, at *8-9 (N.D.N.Y. July 29, 2013).
The residential re-entry center that plaintiff resided in seems
to fall in between the two types of entities. On the one hand,
Community First is governed by BOP regulations and residents are
not free to leave the residence at will; on the other hand, a
residential re-entry center, like a residential treatment center

---

[4]     Even if private prison operators may be held to have acted under
color of state law for purposes of § 1983, the Supreme Court in
*Minneci* barred Eighth Amendment *Bivens* claims against  employees of
private correctional facilities. *Minneci*, 565 U.S. at 626.   It is
unclear how broadly to read *Minneci*, and some federal district courts
have permitted *Bivens* claims against employees of private correctional
facilities arising under other constitutional provisions. *See*
*Espinoza*, 2013 WL 1232208, at *8 (collecting cases). Community First,
however, is not a private correctional facility.

for parolees, affords prisoners "a reasonable opportunity to adjust to and prepare for reentry . . . into the community." *See* Second Chance Act, 18 U.S.C. § 3624(c)(1).

Thus, the law is not clear on whether a residential re-entry center like Community First is a governmental actor under the public function test. Furthermore, to the extent that plaintiff hopes to rely on the fact that Community First was a contractor for the federal government, the court notes that the mere existence of a contract between the halfway house and the federal government is not in itself sufficient to establish that the entity, much less its employees, were government actors. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 840-41 (1982) ("Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts."); *Burton v. Am. Fed'n of Gov't Employees (AFGE) 1988*, No. 11-CV-1416, 2012 WL 3580399 (E.D.N.Y. Aug. 17, 2012).

Additionally, aside from the contracted services it receives from Community First, the government does not appear to have any financial interest in Community First or its private employees. *See Holly I*, 434 F.3d at 292-93 (finding no federal action in part because of "no suggestion that the federal government has any stake, financial or otherwise," in private prison contractor); *Phillips*, 2009 WL 909593, at *3 (fact that

halfway house was not-for-profit agency "alone would lead one to conclude that [it] is a private organization . . . not subject to liability under § 1983").

Moreover, regulation by the federal government, in this case the BOP, is insufficient to bring defendants under the scope of state action. *Williams v. Crawford*, No. 88-CV-80, 1988 WL 52198, at *2 (E.D.N.Y. May 13, 1988) (citing *Blum v. Yaretsky*, 457 U.S. at 1004); *see also Cooper*, 577 F.3d at 492 (noting that extensive state regulation of private entity does not convert a private contractor into a state actor). Nor does plaintiff suggest that federal policy or decisionmaking played a role in the alleged constitutional deprivation committed by Community First's employees. *See Holly I*, 434 F.3d at 293; *Island Online*, 119 F. Supp. 2d at 307 ("Action taken by private entities with the mere approval or acquiescence of the State is not state action." (internal citation and quotation marks omitted)); *Rendell-Baker*, 457 U.S. at 842 (finding that private school was not state actor where, regardless of extensive regulation of private school, government had little involvement in *specific* challenged action). Indeed, plaintiff neither suggests that the three-hour limitation for religious travel passes was a BOP rule nor that the BOP was involved in any way with defendants' actions in issuing passes to attend religious services. (*See* Am. Compl. at 2.) Thus, for all the foregoing

reasons, the court finds that the individual defendants were not acting "under color of federal law" so as to create constitutional liability under *Bivens*.

Acknowledging that the federal courts are deeply split on whether a *Bivens* remedy is available in the First Amendment context for Free Exercise claims, and that there is no controlling precedent allowing a *Bivens* claim against private employees of a private contractor, and based on the court's determination that the individual defendants have not acted under color of federal law, the court holds that plaintiff cannot sustain a *Bivens* claim alleging violation of his Free Exercise rights against the individual defendants. The court is particularly mindful of the Second Circuit's admonition that a "*Bivens* remedy is an extraordinary thing that should rarely if ever be applied in new contexts." *Arar v. Ashcroft*, 585 F.3d at 571 (internal quotation marks omitted).[5] Therefore, plaintiff's claims against individual defendants are dismissed.

### B. Failure to Sufficiently Plead a Free Exercise Claim

Moreover, even if the court were to imply a *Bivens* remedy in this new context, plaintiff's Free Exercise claim would still fail under Rule 12(b)(6).

---

[5]    In fact, the Supreme Court "has reversed more than a dozen appellate decisions that had created new actions for damages" under *Bivens*. *Vance v. Rumsfeld*, 701 F.3d 193, 199 (7th Cir. 2012).

It is well-established that prisoners, despite being in custody, "retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (Sotomayor, J.). However, the religious rights of an individual in custody "must be balanced against the interests inherent in prison administration." *Pugh v. Goord*, 571 F. Supp. 2d 477, 497 (S.D.N.Y. 2008) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)). The Second Circuit has held that to prevail on a free exercise claim, a prisoner "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006).

To constitute a substantial burden, the plaintiff "must demonstrate that the government's action pressure[d] him to commit an act forbidden by his religion or prevent[ed] him from engaging in conduct or having a religious experience mandated by his faith." *Muhammad v. City of N.Y. Dep't of Corr.*, 904 F. Supp. 161, 188 (S.D.N.Y. 1995)) (internal quotation marks and citation omitted). The government's interference with plaintiff's exercise of religion must be "more than an inconvenience," and must rise to the level of "burden[ing] a belief central to plaintiff's religious doctrine." *Alameen v. Coughlin*, 892 F. Supp. 440, 448 (E.D.N.Y.

1995).  The defendant must justify the restriction of plaintiff's free exercise rights "by reference to legitimate penological interests," which may include prison security and institutional safety goals.  *Lombardo v. Holanchock*, No. 07 Civ. 8674, 2008 WL 2543573, at *6 (S.D.N.Y. June 25, 20008); *Muhammad*, 904 F. Supp. at 189.  It is well-established "that a generally applicable policy will not be held to violate a [prisoner's] right to free exercise of that religion if that policy is reasonably related to legitimate penological interests."  *Hall v. Ekpe*, 408 F. App'x 385, 387-88 (2d Cir. 2010).

Here, defendants chose not to brief the merits of plaintiff's free exercise claim in their motion to dismiss, despite the court's prior order encouraging defendants to raise all possible grounds for dismissal in the interest of judicial economy.  (*See* 3/18/13 Order at 17 n.11.)  Nevertheless, the court is doubtful that, even if a *Bivens* action is permitted here, plaintiff has adequately pleaded that his free exercise claim is based upon a sincerely held religious belief and that defendants' alleged conduct constituted a substantial burden on his religious beliefs.

Although it is not the province of the federal judiciary to divine whether a plaintiff *objectively* holds a sincere religious belief, "scrutiny of the prisoner's sincerity

is often essential in 'differentiating between those beliefs
that are held as a matter of conscience and those that are
animated by motives of deception and fraud.'" *Ford*, 352 F.3d at
588 (citing *Patrick v. LeFevre*, 745 F.2d 153, 156 (2d Cir.
1984)).  Thus, a plaintiff must demonstrate "that the beliefs
professed are 'sincerely held' and in the individual's 'own
scheme of things, religious.'"  *Id.* at 588 (quoting *Fifth Ave.
Presbyterian Church v. City of New York*, 293 F.3d 570, 574 (2d
Cir. 2002)).  At the motion to dismiss stage, a complaint "must
. . . assert sufficient allegations necessary to establish that
plaintiff's claim is based upon a sincerely held religious
belief."  *Meadows v. Lesh*, No. 10-CV-00223, 2010 WL 3730105, at
*3 (W.D.N.Y. Sept. 17, 2010).

Here, plaintiff alleges that he wished to attend
Quaker services on Sundays, was prevented from doing so due to
the three-hour limit on travel passes, and subsequently attended
Jewish services.  (Am. Compl. at 2.)  He does not allege a
sincerely held belief in the Quaker religion.  Although it is
certainly possible for an individual to hold sincere religious
beliefs in two different religions within the span on one month,[6]

---

[6]     Plaintiff entered Brooklyn House on July 31, 2011 in connection
with his sentencing in the criminal proceeding before Judge Allyne
Ross.  (Docket No. 93-CR-1287, ECF No. 202.)  Plaintiff alleges that
at some point thereafter, he wished to attend Quaker services in
downtown Brooklyn on Sundays, but was given a three-hour pass that did
not allow him enough time to travel to and from Brooklyn House to the
services.  (Am. Compl. at 2.)  Plaintiff alleges he then received a

plaintiff alleges no other facts suggesting that his belief in the Quaker religion was sincere at the time of the events in question.[7]

Furthermore, plaintiff must also allege that defendants' conduct constituted a "substantial burden" on his sincerely held religious beliefs by preventing him from engaging in conduct or having a religious experience mandated by his religion. *Muhammad*, 904 F. Supp. at 188. Plaintiff has not alleged that attending weekly services is a religious experience mandated by the Quaker religion. Moreover, not permitting a prisoner to attend two religious services "is a *de minimis*, or insubstantial, burden on an inmate's ability to freely exercise his religion." *Smith v. Graziano*, No. 08-CV-469, 2010 WL 1330019, at *9 (N.D.N.Y. Mar. 16, 2010) (collecting cases). Plaintiff fails to provide the dates on which he was allegedly prevented from attending Quaker services, despite Judge Cogan's previous order instructing him to do so.[8] Plaintiff entered

_____

pass to attend Jewish services on August 20, 1011. Plaintiff filed a notice of change of address, after he left Brooklyn House, on September 7, 2011. (ECF No. 3, Not. of Change of Address dated 9/7/11.)

[7] Although plaintiff alleges that on July 21, 2011, Judge Ross ordered that he be allowed to attend Jewish services and Quaker services each week, this court previously found that no such order existed on plaintiff's criminal proceeding docket. (3/18/13 Mem. & Order, at 5 n.6.) Docket sheets are public records of which the court may take judicial notice for a Rule 12(b)(6) motion. *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006).

[8] In Judge Cogan's September 8, 2011, Memorandum and Order dismissing plaintiff's complaint and granting leave to replead, Judge

Brooklyn House on July 31, 2011, and alleges that defendants
made it impossible for him to attend Quaker services "each
Sunday" prior to August 20, 2011, the date that he received a
pass to attend Jewish services.  Accordingly, although plaintiff
may well have missed more than two Quaker services, by
neglecting to specify the relevant dates in his amended
complaint as explicitly ordered by Judge Cogan, plaintiff fails
to adequately establish that defendants' conduct was more than
an insubstantial burden on his ability to freely exercise his
religion.

Finally, although defendants do not address the merits
of plaintiff's free exercise claim, the court notes that there
are obvious legitimate institutional security concerns related
to restricting the time on a travel pass given to residents at
an RCC, who are serving supervised release terms and whose
activities and travel must necessarily be monitored.

Accordingly, for the above reasons, plaintiff's free
exercise claim against the individual defendants, even if
permitted under *Bivens*, fails to state a claim under Rule
12(b)(6).  For this additional reason, plaintiff's claim must be
dismissed.

---

Cogan ordered plaintiff to "provide a statement of claim, including
the date(s) of all relevant events and a brief description of what
each named defendant allegedly did or failed to do that violated
plaintiff's civil rights.  If plaintiff fails to file an amended
complaint as directed, judgment dismissing the complaint shall enter."
(*See* ECF No. 4, Mem. & Order dated 9/8/11, at 5.)

## CONCLUSION

For the foregoing reasons, the individual defendants' Rule 12(b)(6) motion to dismiss is granted in its entirety, and the plaintiff's amended complaint is dismissed with prejudice.

Counsel for defendants is respectfully directed to serve a copy of this Memorandum and Order on plaintiff and note service on the docket within two days of the date of this Memorandum and Order.  The Clerk of Court is respectfully requested to enter judgment in defendants' favor, serve plaintiff with a copy of the Judgment and his appellate rights, note service on the docket, and close this case.


**SO ORDERED.**

Dated: March 27, 2014
       Brooklyn, New York

                                    _____/s/_____ _____
                                    KIYO A. MATSUMOTO
                                    United States District Judge
                                    Eastern District of New York